**UNITED STATES of America,**

v.

**Jesus Manuel GUZMAN, Defendant.**

**No. 5:08–CR–409 (DNH).**

United States District Court,
N.D. New York.

Oct. 17, 2008.

Melissa A. Tuohey, Esq., Office of the Federal Public Defender–Syracuse Office, Districts of Northern New York & Vermont, Syracuse, NY, for Defendant.

Andrew T. Baxter, Office of the United States Attorney, Of counsel: Lisa M. Fletcher, Esq., Assistant United States Attorney, Syracuse, NY, for the United States of America.

## *MEMORANDUM–DECISION and ORDER*

DAVID N. HURD, District Judge.

### I. *INTRODUCTION*

Defendant Jesus Guzman ("defendant") is charged with one count of traveling in interstate commerce and thereafter knowingly failing to register and update his sex offender registration in violation of 18 U.S.C. § 2250(a).

Defendant moves to dismiss the Indictment. The United States of America ("Government") opposes and moves for reciprocal discovery. Oral argument was heard on October 10, 2008.

## II. BACKGROUND

### A. Facts

The factual circumstances leading up to defendant's arrest and indictment parallel the facts recently presented before this court in *United States v. Hall*, 577 F.Supp.2d 610 (N.D.N.Y.2008). On April 30, 1998, defendant was convicted in New York State Court of two counts of sexual abuse in the First Degree and two counts of Endangering the Welfare of a Child. As a convicted sex offender, defendant was required to register with the New York State Sex Offender Registry and keep his registration current.

In accordance with law, defendant registered with the New York State Sex Offender Registry on June 22, 1998 and updated his registration in April of 2007 following his release from prison. At that time, defendant was notified by way of his completed change of address form that he was required to update his registration upon moving to another state. Defendant thereafter traveled to and resided in Massachusetts but failed to update his registration with either the New York State or Massachusetts Sex Offender Registry. On April 29, 2008, defendant was arrested in Massachusetts for failing to update his sex offender registration.

On May 12, 2008, the Government filed a complaint alleging defendant failed to register under the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16913, after traveling in interstate commerce in violation of the federal criminal penalty statute, 18 U.S.C. § 2250(a). On October 2, 2008, a grand jury indicted defendant on one count of knowingly failing to update his sex offender registration after traveling in interstate commerce as required by SORNA and in violation of 18 U.S.C. § 2250(a).[1]

### B. The Federal Duty to Register as a Sex Offender

SORNA provides: "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). A "sex offender" is defined as any individual who is convicted of a sex offense under either state or federal law. 42 U.S.C. § 16911(1). Following a change of a sex offender's name, residence, employment, or student status, SORNA requires a sex offender notify the state in which he lives of such change(s). 42 U.S.C. § 16913(c).

### C. The Federal Criminal Penalty for Failure to Register

While § 16913 creates a sex offender's duty under federal law to register with state sex offender registries and continually update one's registration, 18 U.S.C. § 2250(a) serves as the enforcement mechanism for a sex offender's duty to register. Pursuant to § 2250(a), any sex offender who is required to register under SORNA and either was convicted of a federal sex offense or was convicted of a state sex offense and traveled in interstate commerce faces up to ten years in prison for knowingly failing to register or update his registration.

---

1. The government initially charged defendant with two counts of failing to register in violation of § 2250(a) because he failed to notify both the New York and Massachusetts Sex Offender Registries. The government has since conceded that defendant's failure to notify New York and Massachusetts of his change of address does not constitute two separate violations of § 2250(a) because the statute only requires a sex offender notify one of the relevant jurisdictions.

## III. DISCUSSION

### A. Motion to Dismiss

Defendant puts forth the same arguments raised by the defendant in *Hall*, 577 F.Supp.2d 610. In particular, defendant argues the duty to update one's sex offender registration pursuant to SORNA constitutes an unconstitutional exercise of Congress's power under the Commerce Clause. Although *Hall* upheld Congress's authority to criminalize a sex offender's failure to update his registration after traveling in interstate commerce, 577 F.Supp.2d at 619, *Hall* also held that Congress lacked the authority to impose a federal duty to register onto all sex offenders regardless of whether a sex offender traveled in interstate commerce or whether was convicted of a purely state sex offense. *Id.* at 622–23. Because the duty to register as a sex offender under § 16913 is a predicate to criminal liability under § 2250(a), *Hall* dismissed the defendant's Indictment on the ground that "the constitutional defect of § 16913 taints § 2250(a)." 577 F.Supp.2d at 623.

In addition to the same arguments asserted on its behalf in *Hall*, the Government presently raises a number of new arguments in opposition to defendant's Commerce Clause challenge. The Government's new arguments may be summarized as follows: (1) Section 16913 is a valid exercise of Congress's power under the Commerce Clause because Congress may regulate intrastate activity that has a substantial effect upon interstate commerce; (2) the creation of the duty to register under § 16913 is a proper exercise of Congress's power under the Necessary and Proper Clause; (3) the duty to register under § 16913 is a proper exercise of Congress's spending powers; and (4) defendant is barred from challenging SORNA under the Commerce Clause because he in fact failed to update his sex offender registration after traveling in interstate commerce.

The arguments that were, for whatever reason, not presented in *Hall* will be considered. Further, although not raised in *Hall*, the spending powers argument now raised by the Government was considered and rejected. *See Hall*, 577 F.Supp.2d at 622. For the same reasons as delineated in *Hall*, the spending powers argument is rejected and therefore will not be discussed further in this opinion.

### 1. Congress's Authority to Regulate Intrastate Activity Under the Commerce Clause

The United States Supreme Court has identified three categories of activities Congress may regulate under its commerce power: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though they may come only from intrastate activities;" and (3) "those activities having a substantial relation to interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558–59, 115 S.Ct. 1624, 1629–30, 131 L.Ed.2d 626 (1995). To regulate activities falling under the third category of commercial activity, such activities must substantially affect interstate commerce. *Id.* at 559, 115 S.Ct. at 1630. Four factors are used to determine whether an activity substantially affects interstate commerce: (1) whether the statute regulates activity that is economic in nature; (2) whether the statute includes a jurisdictional element, i.e., a limitation of the statute's application to activities having a clear connection with or effect upon interstate commerce; (3) whether there are congressional findings concerning the effect of the regulated activity upon interstate commerce; and (4) the strength of the nexus between the

regulated activity and the substantial effect upon interstate commerce. *United States v. Morrison*, 529 U.S. 598, 610–12, 120 S.Ct. 1740, 1750–51, 146 L.Ed.2d 658 (2000).

■ The Government seeks to sustain § 16913 as a regulation of activity that substantially affects interstate commerce in the aggregate. The Government submits that § 16913 was enacted to create a national registration requirement for sex offenders because the "lack of uniformity among states' laws, and the varied registration requirements in every state, had a substantial effect on interstate commerce." Government's Resp. to Def's. Mot. to Dismiss, at 16. In support of its position, the Government cites *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), and *Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005), as examples of when the Supreme Court upheld Congress's power to regulate intrastate activity so long as the regulated activity had a substantial effect upon interstate commerce in the aggregate.

In *Wickard*, the Court upheld Congress's power to regulate the personal wheat production of farmers under the Agricultural Adjustment Act of 1938. 317 U.S. at 128–29, 63 S.Ct. at 90–91. The Court explained that the challenged statute was designed to control the volume of wheat moving in interstate commerce in order to avoid surpluses and detrimentally low prices. *Id.* at 128, 63 S.Ct. at 90–91. The wheat farmer challenging the statute conceded Congress could regulate the production of wheat sold or transported in interstate commerce, but he contended Congress lacked the constitutional authority to limit the amount of wheat produced on his farm for his own personal consumption. *Id.* at 119, 63 S.Ct. at 86. The Court acknowledged that the farmer's "contribution to the demand for wheat may be trivial by itself," but upheld the statute because the farmer's wheat production substantially affected the demand and supply of wheat when aggregated with other similarly situated wheat farmers. *Id.* at 127–28, 63 S.Ct. at 90.

In *Raich*, the Supreme Court upheld Congress's authority to regulate personal marijuana cultivation under the Controlled Substances Act. 545 U.S. at 32–33, 125 S.Ct. at 2215. The Court analogized the challenged statute to the Agricultural Adjustment Act considered in *Wickard* and found that the purpose of the Controlled Substances Act "is to control the supply and demand of controlled substances in both lawful and unlawful drug markets." *Id.* at 19, 125 S.Ct. at 2207. The defendant indicted under the statute argued Congress could not regulate his personal cultivation of marijuana because he did not intend to sell or distribute the marijuana in interstate commerce, but rather, only intended to use the marijuana for medical purposes pursuant to California State Law. *Id.* at 15, 125 S.Ct. at 2204–05. Like the reasoning employed in *Wickard*, the Court upheld the statute after concluding that the defendant's in-home manufacture and use of marijuana would substantially affect the demand and supply of marijuana when aggregated with other marijuana users in similar situations. *Id.* at 19, 125 S.Ct. at 2207.

The Government concedes that *Wickard* and *Raich* dealt with activity that was inherently economic, whereas § 16913 regulates activity of a non-economic nature. Notwithstanding this distinction, the Government argues that § 16913 may be upheld because of a supposed aggregate effect upon interstate commerce. The Government cites *Raich* for the proposition that "even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a

substantial economic effect on interstate commerce." *Id.* at 17, 125 S.Ct. at 2205–06 (quoting *Wickard,* 317 U.S. at 125, 63 S.Ct. at 89).

The Government's interpretation of *Raich* is misguided because it ignores the significance of the economic nature of the regulated activities in *Raich* and *Wickard.* Albeit not regarded as *commerce* because the *commodities* at issue in *Wickard* and *Raich* were produced locally for personal consumption rather than for commercial distribution, the regulated activity was still economic in nature because it concerned the production of goods. The Supreme Court exerted considerable effort to distinguish its decision in *Raich* from its decisions in *Lopez* and *Morrison* on the ground that the Controlled Substances Act regulated *economic* intrastate activity: "Unlike those at issue in *Lopez* and *Morrison,* the activities regulated by the [Controlled Substances Act] are quintessentially economic. 'Economics' refers to the 'production, distribution, and consumption of commodities.'" *Raich,* 545 U.S. at 25–26, 125 S.Ct. at 2211 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 720 (1966)). Rather than overturn *Morrison,* the Court explained that "[b]ecause the [Controlled Substances Act] is a statute that directly regulates economic, commercial activity, our opinion in *Morrison* casts no doubt on its constitutionality." *Raich,* 545 U.S. at 26, 125 S.Ct. at 2211. Accordingly, *Raich* and *Wickard* are distinguishable and do not support the constitutionality of § 16913.

In furtherance of its argument that the regulated activity substantially affects interstate commerce in the aggregate, the Government cites to *United States v. Passaro,* No. 07–CR–2308–BEN (S.D.Cal. Dec. 17, 2007). The *Passaro* Court held the duty to register as a sex offender under SORNA had a substantial effect upon interstate commerce because

"it is rational to conclude that maintaining a comprehensive national registry of sex offenders affects interstate commerce. For individuals engaging in any commerce-related activity, personal safety and safety of their families is a prime concern. Economic development in certain areas may be encouraged or discouraged depending on the safety level. Requiring sex offenders to register within three days of a change in residence is a means reasonably adapted to achieving SORNA's purpose.

*Id.* at 9.

In essence, the Government offers *Passaro* as support for its argument that a sex offender's intrastate change of address, employment, or student status substantially affects interstate commerce in the aggregate on the premise that individuals engaging in interstate commercial activity may fear for their personal safety. This argument must fail, however, as it is analogous to the "cost of crime" argument rejected in *Lopez. See Lopez,* 514 U.S. at 563–64, 115 S.Ct. at 1632; *see also, Morrison,* 529 U.S. at 617, 120 S.Ct. at 1754 ("We accordingly reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce."). In *Lopez,* the Government unsuccessfully attempted to persuade the Court that, *inter alia,* violent crime such as the possession of a firearm in a school zone discourages individuals from traveling in interstate commerce to areas perceived to be unsafe. *Id.* The Court warned: "[I]f we were to accept the Government's arguments, we are hard pressed to posit any activity by an individual that Congress is without power to regulate." *Id.* at 564, 115 S.Ct. at 1632.

The Government's present argument must fail under *Lopez.* Whether arguing that violent crime discourages people from

traveling in interstate commerce or that personal safety may affect individuals' decisions to engage in commerce-related activity, the rationale behind both arguments is the same. In both instances, the Government reasons that the regulated activity has a substantial effect upon commerce because a fear for personal safety may dissuade others from engaging in interstate commerce. Therefore, in light of the *Lopez* Court's rejection of such an argument, § 16913 cannot be sustained as a regulation of activity that substantially affects interstate commerce.

██ Although the Government correctly articulates that Congress may regulate intrastate activity so long as there is a rational basis to conclude such activity has an aggregate effect on interstate commerce, *Raich*, 545 U.S. at 22, 125 S.Ct. at 2208, such a standard does not render obsolete a judicial evaluation of whether the regulated activity sufficiently affects interstate commerce. *Morrison*, 529 U.S. at 615, 120 S.Ct. at 1752 ("Whether particular operations affect interstate commerce sufficiently to come under the constitutional power of Congress to regulate them is ultimately a judicial rather than a legislative question."). Further, the Government forgoes any analysis in its response papers under the four factors specified in *Morrison* for whether a regulated activity has a substantial effect upon interstate commerce.

Section 16913 indeed fails pursuant to such an analysis, even under a rational basis standard. First, § 16913 does not regulate activity that is economic in nature. SORNA's stated purpose is "to protect the public from sex offenders and offenders against children." 42 U.S.C. § 16901. The creation of a federal duty to register or update one's registry as a sex offender does not have a connection to commerce and cannot be construed as a regulation of commercial activity. Second,

by its very language, § 16913 lacks a jurisdictional element. *See* 42 U.S.C. § 16913. As explained in *Hall*, § 16913 imposes a federal duty upon sex offenders to update their registration, regardless of whether they travel in interstate commerce. Third, SORNA's legislative history lacks any clear congressional findings concerning the effect of sex offender registration upon interstate commerce. *United States v. Waybright*, 561 F.Supp.2d 1154, at 1165 (D.Mont.2008). Fourth, in light of the *Lopez* Court's rejection of the argument that violent crime may discourage individuals from engaging in interstate commerce, a sex offender's duty to update his registration after changing his address, employment, or student status while remaining within a state has too tenuous a connection to a substantial effect upon interstate commerce. Therefore, § 16913 may not be sustained under the Commerce Clause.

### 2. *The Necessary and Proper Clause*

██ Alternatively, the Government contends that § 16913 is a proper exercise of Congress's power under the Necessary and Proper Clause. The Necessary and Proper Clause allows Congress to "make all Laws which shall be necessary and proper" for executing Congress's enumerated powers. U.S. CONST. art. I, § 8, cl. 18. Under the clause, Congress may regulate intrastate activities that do not substantially affect interstate commerce so long as the regulation is "a necessary part of a more general regulation of interstate commerce." *Raich*, 545 U.S. at 37, 125 S.Ct. at 2217 (Scalia, J., concurring). In the context of a Necessary and Proper Clause argument, the constitutional question becomes whether the means chosen by Congress are "reasonably adapted" to achieve a legitimate objective under the Commerce Clause power. *Id.* Further, when regulating non-economic intrastate activities, the analysis focuses upon wheth-

er the more general "regulatory scheme could be undercut unless the intrastate activity were regulated." *Lopez*, 514 U.S. at 561, 115 S.Ct. at 1630–31; *see also Raich*, 545 U.S. at 38, 125 S.Ct. at 2218 (Scalia, J., concurring).

The Government asserts that the federal duty to register under § 16913, regardless of whether a sex offender travels in interstate commerce, "is a necessary step toward carrying out [SORNA's] goal." Government's Resp. to Def's. Mot. to Dismiss, at 21. The Government argues that without a uniform registration requirement throughout the country, sex offenders may more easily cross state lines undetected and the purpose of SORNA may be defeated. The Government attempts to show that § 16913 is a reasonably adapted regulation of intrastate activity because the overall regulatory scheme of SORNA "could be undercut" otherwise.

The Government's argument is at odds with both the stated purpose of SORNA and the jurisdictional limitation of the federal criminal penalty statute codified in 18 U.S.C. § 2250(a). First, by way of its own argument, the Government agrees "[t]he ultimate goal of SORNA was to make sex offender registration obligations uniform and real, even for those sex offenders who would rather migrate than continue to register." Government's Resp. to Def's. Mot. to Dismiss, at 15. The statutory language also provides that SORNA's purpose is "to protect the public from sex offenders" and that the statute's enactment "establishes a comprehensive national system for the registration of [sex] offenders." 42 U.S.C. § 16901. Significantly, § 16901 is entitled, "Declaration of Purpose," and nowhere throughout the section is there any mention, whether by express statement or indirect reference, that SORNA's purpose is to track sex offenders *after* they cross interstate lines. *See id.* Rather, SORNA's purpose is to track offenders at all times,

regardless of whether they travel in interstate commerce—an unconstitutional purpose that Congress pursued through the creation of a national federal duty to register under § 16913. *See Waybright*, 561 F.Supp.2d. at 1167.

■ The Government urges this Court to adopt the reasoning in *United States v. Thomas*, 534 F.Supp.2d 912 (N.D.Iowa 2008), whereby the court upheld SORNA under the Necessary and Proper clause as a reasonably adapted means of tracking sex offenders across interstate lines. 534 F.Supp.2d at 921–22. The *Thomas* Court's reasoning is unpersuasive, however, because it ignores the statutory "Declaration of Purpose" stated in § 16901, namely, to establish uniform registration requirements for all sex offenders. *See* 42 U.S.C. § 16901. The plain meaning of § 16901 renders the Necessary and Proper Clause argument ineffective because the clause may not be used to sustain the regulation of intrastate activity having an insufficient effect upon interstate commerce if the more general statutory objective is outside the scope of the constitution. *See McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819) ("Let the end be legitimate, let it be within the scope of the constitution. . . .").

Second, the jurisdictional element within the federal criminal penalty statute, 18 U.S.C. § 2250(a), cuts against any contention that the overall regulatory scheme "could be undercut" if not for the regulation of intrastate activity pursuant to § 16913. Although the jurisdictional limitation within § 2250(a) lends some measure of support to that section's constitutionality, it is demonstrative of the flaw in the Government's Necessary and Proper Clause argument as well as Congress's attempt to circumvent the ruling in *Lopez*. The Government asserts Congress may constitutionally regulate the intrastate ac-

tivity in question under the Necessary and Proper Clause even if the regulated activity has no substantial effect upon interstate commerce. Further, the Government contends the creation of a national registration requirement was reasonably adapted to track sex offenders in interstate commerce. The Government's reasoning then begs the question: If, according to the Government, Congress has the power to regulate the intrastate activity of sex offenders, why does § 2250(a) only enforce the registration requirements after a sex offender travels in interstate commerce? It is difficult to reconcile Congress's decision to forego a criminal penalty for the intrastate registration of sex offenders with the Government's argument that Congress has the power to regulate such activity and that the overall regulatory scheme of SORNA could be undercut if not for the creation of a national registration requirement. In light of Congress's decision not to provide an enforcement mechanism for the national registration requirements until after a sex offender travels in interstate commerce, the Government has failed to show that SORNA's overall regulatory scheme could indeed be undercut without the creation of a federal duty to register as a sex offender regardless of whether a sex offender travels in interstate commerce.

Accordingly, the Necessary and Proper Clause does not salvage the constitutionality of § 16913. The stated purpose of SORNA is to create comprehensive and uniform sex offender registration requirements. See 42 U.S.C. § 16901. Additionally, the notion that Congress's general regulatory scheme would be undercut without a national sex offender registration requirement is inconsistent with the jurisdictional element of § 2250(a) and the Government's argument that Congress has the power to regulate the intrastate activity of sex offenders. Under the Government's reasoning, Congress could go as far as to criminalize sex offenders' failure to

register, regardless of whether they traveled in interstate commerce. Rather than do so, however, Congress enacted § 2250(a) and § 16913 in an effort to bolster the constitutionality of SORNA and circumvent the ruling in *Lopez*. Therefore, § 16913 is not a reasonably adapted means to achieve a constitutional objective and the Necessary and Proper Clause argument is rejected.

### 3. Defendant's Ability to Bring a Commerce Clause Challenge

■■■ The Government also argues defendant should be barred from asserting a Commerce Clause challenge because he in fact traveled in interstate commerce and therefore may constitutionally be required to update his sex offender registration after establishing a new residence in a new state. Notwithstanding the disfavor of facial challenges, see *Sabri v. United States*, 541 U.S. 600, 609, 124 S.Ct. 1941, 1948, 158 L.Ed.2d 891 (2004), a statute cannot be constitutionally applied if Congress lacks the authority to enact the regulatory scheme at issue. *United States v. Comstock*, 507 F.Supp.2d 522, 528–29 (E.D.N.C.2007) (acknowledging defendant's facial challenge but holding the civil commitment of sex offenders unconstitutional because the statute at issue was beyond Congress's authority). "In *Lopez* and *Morrison*, the parties asserted facial challenges, claiming 'that a particular statute or provision fell outside Congress' commerce power in its entirety.'" *Raich*, 545 U.S. at 71, 125 S.Ct. at 2237 (Thomas, J., dissenting) (quoting *Id.* at 23, 125 S.Ct. at 2209 (majority opinion)).

Like the challenges brought in *Lopez* and *Raich*, defendant has challenged SORNA on the ground that § 16913 is beyond Congress's commerce power. The fact that defendant traveled in interstate commerce does not render his duty to register under § 16913, both before he traveled in

interstate commerce and afterwards, within the powers vested to Congress under the Constitution. Further, the unconstitutional objective of SORNA—establishing uniform sex offender registration requirements under federal law—renders § 16913 outside Congress's Commerce Clause power and unconstitutional as applied to all sex offenders. Therefore, defendant may assert his Commerce Clause challenge despite having traveled in interstate commerce.

### B. *Cross-Motion for Discovery*

The Government moves for discovery of evidence the defendant intends to introduce during his case in chief pursuant to Federal Rule of Criminal Procedure 16(b)(1). In light of the decision to grant defendant's motion to dismiss the Indictment, the Government's cross-motion will be denied as moot.

## IV. *CONCLUSION*

As discussed before, this court was previously familiar with the legal issues surrounding defendant's motion as the same arguments were raised in *Hall*, 577 F.Supp.2d 610. For the same reasons delineated in *Hall*, all of the arguments raised by defendant, with exception to the challenge of § 16913 under the Commerce Clause, are rejected. Likewise, the new arguments raised by the Government in opposition to defendant's motion to dismiss the Indictment are also rejected, and defendant's motion to dismiss the Indictment will be granted.

First, SORNA cannot be upheld as a regulation of activity that substantially affects interstate commerce. In addition to the plainly non-economic nature of the regulated activity, the *Lopez* court expressly rejected a "cost of crime" argument. The Government's contention that the regulation of sex offenders' intrastate activity substantially affects interstate commerce because individuals may be discouraged from engaging in commercial activities for fear of their personal safety is analogous to the argument rejected in *Lopez*, and therefore, must also be rejected. Indeed, it follows that if the regulation of firearms does not rise to the level of economic activity needed to sustain a federal law under the Commerce Clause, the regulation of sex offenders surely does not rise to that requisite level either. Second, the Necessary and Proper Clause cannot sustain the creation of a federal duty for all sex offenders to update their registration regardless of whether they travel in interstate commerce. Section 16913 was not reasonably adapted to achieve a constitutional objective, and there is little support for the notion that Congress's goal of tracking sex offenders after they travel in interstate commerce would be undercut if not for the regulation of the intrastate activity in question. Finally, defendant may assert his Commerce Clause challenge despite having traveled in interstate commerce because he alleges § 16913 is unconstitutional in its entirety as too broad a use of Congress's lawmaking authority, and by extension, that § 2250(a) is invalid. Because the duty to register as a sex offender pursuant to § 16913 is a predicate for a conviction under § 2250(a), the constitutional defect of § 16913 renders § 2250(a) unenforceable.

Therefore, it is

ORDERED that

1. Defendant's motion is GRANTED;

2. The Government's motion is DENIED; and

3. The Superceding Indictment is DISMISSED.

IT IS SO ORDERED.