# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 08-2126

_____

United States of America,

        Appellee,

v.

David Matthew Howell,

        Appellant.

_____

No. 08-2171

_____

Appeals from the United States
District Court for the
Northern District of Iowa.

United States of America,

        Appellee,

v.

Charles Edward Thomas,

        Appellant.

_____

Submitted: September 22, 2008
Filed: January 13, 2009

_____

Before RILEY, HANSEN, and MELLOY, Circuit Judges.

_____

RILEY, Circuit Judge.

This consolidated appeal involves two convictions under the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. §§ 16901–16991, and its corresponding criminal offense statute, 18 U.S.C. § 2250. In separate proceedings, David Matthew Howell (Howell) and Charles Edward Thomas (Thomas) each conditionally pled guilty to one count of failure to register as a sex offender after traveling in interstate commerce in violation of § 2250.

In the district court, Howell and Thomas argued § 2250 and the registration requirement of SORNA, 18 U.S.C. § 16913, are unconstitutional because they regulate purely intrastate activity that cannot be reached by Congress's commerce clause power. Howell also claimed the Northern District of Iowa was an improper venue for his prosecution. In each case, the district court[1] found SORNA and § 2250 are permissible exercises of congressional authority. The district court also denied Howell's venue objection.[2] We affirm.

I.    BACKGROUND
A.    Howell's SORNA Conviction
In 1987, Howell was convicted in Michigan state court of third degree criminal sexual conduct. After his release from a Michigan prison, Howell did not complete a sex offender registration as required by Michigan law, and was convicted in May 2005

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa in Thomas's case, and the Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa in Howell's case.

[2]Adopting the Report and Recommendation of the Honorable Paul A. Zoss, Chief Magistrate Judge, United States District Court for the Northern District of Iowa.

under Michigan's sex offender registration statute. Howell finally registered as a Michigan sex offender on August 9, 2005.

Sometime after registering, Howell left Michigan. Howell then moved to Iowa in 2006 and resurfaced on May 24, 2007, when authorities in Oelwein, Iowa, responded to a call and questioned Howell as a witness to a crime. During the investigation, the Iowa authorities learned Howell had an outstanding Michigan arrest warrant for failure to register as a sex offender, and also noticed Howell had not completed a sex offender registration as required by Iowa law. Howell was arrested.

Howell was released on June 5, 2007, and registered as a sex offender in Iowa. The next day, Howell left Iowa and moved to Texas. Howell failed to notify Iowa of his change in residency and did not register as a sex offender in Texas. On July 13, 2007, Howell was arrested in Texas on a federal warrant and extradited to the Northern District of Iowa. Shortly thereafter, a federal grand jury returned a two-count superseding indictment against Howell for failing to register as a sex offender.

Howell moved to dismiss the indictment arguing (1) SORNA did not apply to his conduct, and (2) SORNA and § 2250 violate the *ex post facto* clause, the nondelegation doctrine, due process, and the commerce clause. Howell also objected to venue in the Northern District of Iowa. On February 1, 2008, the district court granted Howell's motion to dismiss the first count of his indictment because it violated the *ex post facto* clause, but rejected Howell's arguments to dismiss the second count. The district court found (1) SORNA and § 2250 are constitutional exercises of Congress's commerce clause power, and (2) Iowa venue is proper. Howell then pled guilty to the second count of the indictment on the condition he could appeal the district court's denial of his motion to dismiss the second count. Howell filed a timely appeal.

**B.    Thomas's SORNA Conviction**

In 2000, Thomas was convicted in Iowa of third degree sexual abuse.  After being released from prison in May 2005, Thomas properly registered as a sex offender in Iowa and kept his registration current through 2006.  In January 2007, Thomas decided to move from Iowa to Wisconsin.  Thomas notified Iowa authorities of his intent to move, and after moving, properly registered as a sex offender in Wisconsin.

Thomas resided in Wisconsin until he was evicted from his apartment on September 13, 2007.  Thomas began living in his car in Wisconsin.  On October 10, 2007, he relocated to Iowa and continued to live in his car.  Thomas failed to notify either the Iowa or Wisconsin sex offender registries of his move back to Iowa.  As a result, Thomas was arrested by Iowa authorities on October 24, 2007.

On November 28, 2007, Thomas was indicted on one count of failing to register as a sex offender in violation of § 2250.  Thomas moved to dismiss the indictment arguing SORNA and § 2250 are outside Congress's commerce clause power.  The district court denied this motion on February 13, 2008, finding (1) § 2250 is authorized by the commerce clause, and (2) although SORNA's registration requirement is not authorized under the commerce clause, it is constitutional under the necessary and proper clause.  Thomas then entered a conditional guilty plea.  Thomas now appeals.

## II.    DISCUSSION

These appeals do not involve any factual disputes.  Thus, "[w]e review a challenge to the constitutionality of a federal statute de novo." United States v. Betcher, 534 F.3d 820, 823 (8th Cir. 2008).  We also "review de novo the district court's denial of the motion to dismiss for improper venue, as it involves a matter of law." United States v. Cole, 262 F.3d 704, 709–10 (8th Cir. 2001) (footnote omitted).

## A. SORNA and Section 2250

SORNA is a portion of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587, passed by Congress in 2006 and codified at 42 U.S.C. §§ 16901–16991. Section 16913 of SORNA provides, in part,

> (a) In General
> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
>
> . . . .
>
> (c) Keeping the registration current
> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

If a sex offender fails to register under § 16913, he or she can be prosecuted under 18 U.S.C. § 2250. Section 2250 states,

> (a) In general.—Whoever—
>
> (1) is required to register under [SORNA];
>
> (2)(A) is a sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia,

-5-

Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in Indian country; and

(3) knowingly fails to register or update a registration as required by [SORNA];

shall be fined under this title or imprisoned not more than 10 years, or both.

### B.    Constitutionality of Section 2250

Thomas and Howell first contend § 2250 does not have a sufficient nexus to interstate commerce to be authorized by the commerce clause.  This court has previously held § 2250 is constitutional under the commerce clause.  See United States v. May, 535 F.3d 912, 921–22 (8th Cir. 2008).  Thus, we adhere to that holding.  See United States v. Wilson, 315 F.3d 972, 973–74 (2003) ("this Court's precedent . . . prohibits any three-judge panel of the Court from overruling a previous panel opinion").

### C.    Constitutionality of Section 16913

Thomas and Howell next contend their convictions should be reversed because the registration requirement of § 16913 is outside Congress's commerce clause power.  They argue § 16913 is unconstitutional because it regulates purely non-economic, intrastate activity by requiring registration of sex offenders who were convicted of state offenses but never cross state lines.  Howell and Thomas reason that, if § 16913 is unconstitutional, their prosecutions under § 2250 are invalid because the government must prove they were required to register under § 16913 to satisfy the first element of § 2250.

Our court has not decided whether § 16913 is constitutional under the commerce clause. Although counsel for the government suggested at oral argument May also upheld § 16913 under the commerce clause, we disagree. May only determined the constitutionality of § 2250. Therefore, we are compelled to analyze § 16913 under the commerce clause.[3]

The Supreme Court explains Congress has the authority to regulate the following three categories of interstate commerce: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce." United States v. Lopez, 514 U.S. 549, 558–59 (1995).

Congress also has the ability "[t]o make all Laws which shall be necessary and proper" for the accomplishment of its commerce clause power. U.S. Const. art. I, § 8,

---

[3]Several district courts have decided commerce clause challenges to § 16913. A vast majority of them have found § 16913 constitutional. See, e.g., United States v. Contreras, No. 08-CR-1696, 2008 WL 5272491, at *5 (W.D. Tex. Dec. 18, 2008); see also Tracy Bateman Farrell, Annotation, Validity, Construction, and Application of Federal Sex Offender Registration and Notification Act (SORNA), 42 U.S.C.A §§ 16901 et seq., its Enforcement Provision, 18 U.S.C.A. § 2250, and Associated Regulations, 30 A.L.R. Fed. 213 § 17 (2008). We have found five district courts which have invalidated § 16913 as unconstitutional. United States v. Myers, No. 08-60064-CR, 2008 WL 5156671, at *15–21 (S.D. Fla. Dec. 9, 2008); United States v. Guzman, No. 5:08-CR-409, 2008 WL 4601446, at *5–7 (N.D.N.Y. Oct. 17, 2008); United States v. Hall, No. 5:08-CR-174, 2008 WL 4307196, at *8–11 (N.D.N.Y. Sept. 23, 2008); United States v. Waybright, 561 F.Supp.2d 1154, 1162–68 (D. Mont. 2008); United States v. Powers, 544 F.Supp.2d 1331, 1333–36 (M.D. Fla. 2008). However, Myers, Hall, and Powers failed to analyze specifically § 16913 under the necessary and proper clause. Guzman and Waybright are contrary to our holding that SORNA's intent is to further the interstate tracking of sex offenders. Thus, we conclude the reasoning of these five opinions is unpersuasive.

cl. 18. In the seminal case of <u>McCulloch v. Maryland</u>, 17 U.S. (4 Wheat.) 316, 421 (1819), the Supreme Court elucidated the necessary and proper clause with the following statement: "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional." As this statement makes clear, a law does not have to be undeniably necessary to be proper. <u>Id.</u> at 413. The law simply must be deemed a rational and appropriate means to further Congress's regulation of interstate commerce. <u>See</u> <u>United States v. Darby</u>, 312 U.S. 100, 121 (1941) (explaining legislation is sustained "when the means chosen, although not themselves within the granted power, [are] nevertheless deemed appropriate aids to the accomplishment of some purpose within an admitted power of the national government").

Congress's commerce clause authority can reach wholly intrastate activity. The Supreme Court has stated Congress can regulate intrastate economic activities that have a substantial effect on interstate commerce. <u>See</u> <u>Wickard v. Filburn</u>, 317 U.S. 111, 125 (1942) ("But even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce."). Similarly, the Supreme Court has recognized Congress's ability to regulate intrastate, noneconomic activity that does not have a substantial effect on interstate commerce. This principle was clarified by Justice Scalia when he wrote,

> [T]he authority to enact laws necessary and proper for the regulation of interstate commerce is not limited to laws governing intrastate activities that substantially affect interstate commerce. Where necessary to make a regulation of interstate commerce effective, Congress may regulate even those intrastate activities that do not themselves substantially affect interstate commerce.
>
> . . . .

The regulation of an intrastate activity may be essential to a comprehensive regulation of interstate commerce even though the intrastate activity does not itself "substantially effect" interstate commerce. Moreover, . . . Congress may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce. The relevant question is simply whether the means chosen are "reasonably adapted" to the attainment of a legitimate end under the commerce power.

Gonzales v. Raich, 545 U.S. 1, 35–37 (2005) (Scalia, J., concurring) (internal citations omitted).

A narrow discussion which only analyzes § 16913 under the three categories of Lopez casts doubt on the constitutionality of § 16913. Lopez, 514 U.S. at 558–59. On its face, § 16913 does not have a jurisdictional "hook" to fit under the first two prongs of Lopez, and there is little evidence in this record to show intrastate sex offender registration substantially affects interstate commerce.[4] See id. However, an

---

[4]The district court in Thomas's case analyzed § 16913 under the Lopez factors, declaring,

The first [Lopez] category does not apply, because § 16913 is not an attempt to regulate the use of the channels of interstate commerce. The second category does not apply, because § 16913 is not an attempt to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce. Unlike § 2250, § 16913 is not limited to persons who travel across state lines; the latter statute contains no jurisdictional element and reaches purely intrastate activity insofar as sex offenders who never cross state lines are required to register. The third category does not apply, because there is no evidence in the record that the registration of sex offenders has a substantial relation to interstate commerce, *i.e.*, there is no evidence that "sex offending" is an activity that substantially affects interstate commerce. . . . Any argument that Congress is permitted to enact § 16913 under the Commerce Clause would appear to be too attenuated and, if accepted, "would effectually

analysis of § 16913 under the broad authority granted to Congress through both the commerce clause and the enabling necessary and proper clause reveals the statute is constitutionally authorized. To reach this conclusion, we first address whether SORNA is furthering a legitimate end under the commerce clause.

Howell and Thomas argue SORNA is not furthering a legitimate end under the commerce clause. They contend the end of SORNA is the registration requirement of § 16913. In other words, Howell and Thomas believe SORNA was enacted to require registration of all sex offenders, even those who are wholly intrastate, and § 2250 simply provides a "naked" travel requirement to which § 16913 cannot be "bootstrapped." Under this approach, Howell and Thomas believe Congress was not furthering a legitimate end under the commerce clause because registration is an intrastate activity. In support of this argument, Howell and Thomas cite United States v. Waybright, 561 F.Supp.2d 1154, 1164–67 (D. Mont. 2008). In Waybright, the district court found § 16913 was not constitutional under either the commerce clause or the necessary and proper clause because (1) § 16913 does not fall within any of the Lopez prongs, (2) § 16913 is not economic in nature, and (3) § 16913 created a separate statutory scheme of national sex offender regulation instead of facilitating the implementation of a federal crime under § 2250. See id. at 1163–68. Howell and Thomas urge this court to agree with Waybright, but we decline this invitation.[5]

---

obliterate the distinction between what is national and what is local and create a completely centralized national government." [Lopez, 514 U.S. at 557] (quoting NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37 (1937)).

United States v. Thomas, 534 F.Supp.2d 912, 920–21 (N.D. Iowa 2008). Based upon the record before us, the district court's analysis is well-reasoned, and we move on to our analysis of the Constitution's necessary and proper clause together with the commerce clause, and their application to § 16913.

[5]Since oral argument in this appeal, three other district courts have arrived at conclusions similar to Waybright's. See Myers, 2008 WL 5156671, at *15–21;

-10-

We believe Congress enacted SORNA to track the interstate movement of sex offenders. The language of § 16913 evidences Congress's focus on monitoring this interstate movement of sex offenders by emphasizing the movement of sex offenders from jurisdiction to jurisdiction. The statute requires sex offenders to "register, and keep the registration current, in *each jurisdiction*" where the offender lives, works, or goes to school. 42 U.S.C. § 16913(a) (emphasis added). Subsection (c) focuses on the movement of sex offenders by requiring the offenders to update registration "in at least 1 jurisdiction" within three days of a change identified in subsection (a). 42 U.S.C. § 16913(c). Finally, the statute is concerned with interjurisdictional reporting of sex offender movement by requiring the jurisdiction where the offender updates his or her registration to notify "all other jurisdictions" where the offender must register. Id. This language indicates Congress wanted registration to track the movement of sex offenders through different jurisdictions.

Under § 2250, Congress limited the enforcement of the registration requirement to only those sex offenders who were either convicted of a federal sex offense or who move in interstate commerce. 18 U.S.C. § 2250(a)(2). With this limitation, a resident of Iowa who has been convicted of a state sex offense and who does not leave Iowa would never be subject to federal sanctions if he fails to register. The Iowa resident could only be punished under Iowa law for failure to register. A wholly intrastate offender would never be reached by federal enforcement power. This limitation demonstrates Congress's intention to punish only interstate offenders. Instead of creating a federal crime for failure to register regardless of interstate movement, Congress understood its limited interstate commerce power and reserved prosecution of wholly intrastate offenders to the states. See 18 U.S.C. § 2250(a)(2); see also 42 U.S.C. 16913(e) (requiring each state to implement a criminal statute for failure to register). Thus, the statutory scheme Congress created to enforce § 16913

---

Guzman, 2008 WL 4601446, at *5–7; Hall, 2008 WL 4307196, at *8–11. Like Waybright, we find these opinions to be unpersuasive.

-11-

demonstrates Congress was focused on the interstate movement of sex offenders, not the intrastate activity of sex offenders.

SORNA's declaration of purpose also reflects the act's interstate focus. Section 16901 states Congress wanted "to protect the public from sex offenders and offenders against children" by creating "a comprehensive national system for the registration of [sex offenders]." 42 U.S.C. § 16901. SORNA creates a "comprehensive" and "national" registry to track the interstate movement of offenders. SORNA gives disincentives for each state not implementing an intrastate sex offender registry. See 42 U.S.C. §§ 16912(a), 16925(a) (linking federal funding to the creation of a state sex offender registry). SORNA leaves the intrastate sex offender registry to the states, and concentrates SORNA's regulation on a national coordinated system which identifies the interstate movement of sex offenders.

The legislative history of SORNA supports the conclusion Congress implemented SORNA for interstate regulation. In a House Judiciary Committee Report on a precursor to SORNA, the concern over interstate movement of sex offenders was articulated as follows:

> There is a wide disparity among State registration requirements and notification obligations for sex offenders. This lack of uniformity has been exploited by child sexual offenders with tragic consequences. *Given the transient nature of sex offenders* and the inability of the States to track these offenders, it is conservatively estimated that approximately 20 percent of 400,000 sex offenders are "lost" under State sex offender registry programs.
>
> The most significant enforcement issue in the sex offender program is that over 100,000 sex offenders, or nearly one-fifth in the Nation are "missing," meaning that they have not complied with sex offender registration requirements. *This typically occurs when the sex offender moves from one State to another.* When a sex offender fails to

register in a State in which he resides, there is no effective system by which the States can notify each other about the change in a sex offenders [sic] status.

H.R. Rep. No. 109-218, at 23, 26 (2005) (emphasis added). Also, in the House floor debate on the Adam Walsh Act, Representative Van Hollen noted the registration requirement was "replacing a patchwork of individual systems administered and maintained by each State" so sex offenders cannot "slip through the cracks." 152 Cong. Rec. H5730 (2006) (statement of Rep. Van Hollen). The Congressional record substantiates Congress's specific concerns with interstate movement of sex offenders when enacting SORNA's registration requirements.

Based upon the language, statutory scheme, declaration of purpose, and legislative history of SORNA, we conclude SORNA was intended to regulate the interstate movement of sex offenders.

When § 16913 is analyzed in relation to the purpose of SORNA, it is evident § 16913 is an "appropriate aid[] to the accomplishment" of tracking the interstate movement of sex offenders. See Darby, 312 U.S. at 121. The requirements of § 16913 help establish a system by which the government can monitor the location and travels of sex offenders. Although § 16913 may reach a wholly intrastate sex offender for registry information, § 16913 is a reasonable means to track those offenders if they move across state lines. In order to monitor the interstate movement of sex offenders, the government must know both where the offender has moved and where the offender originated. Without knowing an offender's initial location, there is nothing to ensure the government would know if the sex offender moved. The registration requirements are reasonably adapted to the legitimate end of regulating "'persons or things in interstate commerce'" and "'the use of the channels of interstate commerce.'" May, 535 F.3d at 921 (quoting Lopez, 514 U.S. at 558–59). Covering the registration of wholly intrastate sex offenders is merely incidental to Congress's tracking of sex offenders in interstate commerce. Therefore, § 16913 is constitutional

-13-

under Congress's authority to use the necessary and proper means to further its commerce clause power because it "is a necessary part of a more general regulation of interstate commerce." <u>Gonzales</u>, 545 U.S. at 37 (Scalia, J., concurring).

## D. Howell's Venue

Howell argues the district court erred in finding the Northern District of Iowa was a proper venue for his prosecution. Howell contends the violation of § 2250 was only perpetrated after Howell moved to Texas and failed to register within three days of that move. Howell concludes the crime was wholly committed in Texas.

A defendant has a right under Article III, § 2 of the United States Constitution and the Sixth Amendment to be tried for a crime in the state and district where the crime occurred. <u>See</u> <u>also</u> Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."). A sex offender violates SORNA only when he or she moves between states. Thus, a SORNA violation involves two different jurisdictions. When crimes involve more than one jurisdiction, 18 U.S.C. § 3237 states,

> (a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
>
> Any offense involving . . . transportation in interstate or foreign commerce . . . is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce . . . or person moves."

In Howell's situation, the Northern District of Iowa is a proper venue because Howell's SORNA violation commenced in the Northern District of Iowa. Howell

registered in the Northern District of Iowa after he was released from jail, and he traveled from the Northern District of Iowa when he moved his residence to Texas. Further, Howell failed to notify the Texas sex offender registry of his change in residence, but also failed, as required by law, to notify the Iowa sex offender registry of his move. Thus, Howell's failure to register his move and inform Iowa of his new Texas residence was a material part of the § 2250 violation, and venue is proper in the Northern District of Iowa.[6]

## III.   CONCLUSION

The district court's judgments are affirmed.

_____

[6]Although the government has asked us to find a violation of § 2250 is a continuing offense under § 3237 which is properly prosecuted in any jurisdiction through which Howell moved from Iowa to Texas, we decline to decide this issue because the facts of this case do not involve prosecution in a district through which Howell moved from Iowa to Texas, but rather, where Howell's conduct commenced and where Howell was required to inform the Iowa registry.