# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1165
_____

United States of America

*Plaintiff - Appellee*

v.

Allon Anderson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

_____

Submitted: November 10, 2014
Filed: November 17, 2014

_____

Before BYE, SHEPHERD, and KELLY, Circuit Judges.

_____

BYE, Circuit Judge.

Allon Anderson was indicted with failing to register as a sex offender. Anderson filed a motion to dismiss the indictment arguing, in part, the Sex Offender Registration and Notification Act (SORNA) violates the Commerce Clause. After the

district court[1] denied Anderson's motion to dismiss, Anderson entered a conditional guilty plea and was sentenced to 30 months of imprisonment. Anderson appeals the denial of his motion to dismiss. We affirm.

I

Anderson was convicted of failing to register as a sex offender in violation of 18 U.S.C. § 2250(a)(2)(B), which punishes individuals who travel in interstate commerce and thereafter fail to register as a sex offender pursuant to 42 U.S.C. § 16913. Anderson had previously been convicted of aggravated indecent solicitation of a child in Kansas in 2009 which required him to register as a sex offender under 42 U.S.C. § 16913. Anderson properly registered in Kansas in 2012. Thereafter for the purpose of working, Anderson relocated to Oklahoma, and later Arkansas, in 2012, which triggered a requirement to update his registration under § 16913(c). Anderson failed to ever register as a sex offender in Arkansas. After being indicted in federal court for his failure to register, Anderson filed a motion to dismiss the indictment arguing the registration requirements of SORNA violate the Commerce Clause and the nondelegation doctrine of the United States Constitution and the Eighth Circuit had erred in holding otherwise. The district court denied the motion, and Anderson thereafter entered a conditional plea of guilty. On appeal, Anderson renews his Commerce Clause arguments regarding the constitutionality of SORNA.

II

"We review a challenge to the constitutionality of a federal statute *de novo*." United States v. Betcher, 534 F.3d 820, 823 (8th Cir. 2008). "[I]t is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." Id. (internal

---

[1]The Honorable P.K. Holmes, III, United States District Judge for the Western District of Arkansas.

citation and quotation marks omitted). This rule, however, does not apply when the earlier panel decision is cast into doubt by an intervening Supreme Court decision. United States v. Williams, 537 F.3d 969, 975 (8th Cir. 2008). Likewise, we review *de novo* the denial of a motion to dismiss an indictment. United States v. Yielding, 657 F.3d 688, 702 (8th Cir. 2011).

Federal courts have "a general reticence to invalidate the acts of the Nation's elected leaders" and "'[p]roper respect for a coordinate branch of the government' requires that [a federal court] strike down an Act of Congress only if 'the lack of constitutional authority to pass [the] act in question is clearly demonstrated.'" Nat'l Fed'n of Indep. Buss. v. Sebelius, 132 S. Ct. 2566, 2579 (2012) (quoting United States v. Harris, 106 U.S. 629, 635 (1882)); see also United States v. Morrison, 529 U.S. 598, 607 (2000) (requiring a "plain showing" Congress has exceeded its constitutional bounds before a federal court can invalidate a congressional enactment).

As relevant to Anderson's appeal, SORNA, enacted in July of 2006, makes it a crime for a person (1) "who is required to register under the [Act]" and (2) who "travels in interstate . . . commerce" to (3) knowingly "fail[] to register or update a registration." 18 U.S.C. § 2250(a). A sex offender is required to register in each jurisdiction he resides, works, or studies. 42 U.S.C. § 16913(a). Anderson argues the Supreme Court's decision in National Federation of Independent Business v. Sebelius, 132 S. Ct. 2566, concerning the constitutionality of the Patient Protection and Affordable Care Act, renders SORNA's registration requirement and enforcement thereof to be violative of the Commerce Clause. Thus, Anderson believes both 18 U.S.C. § 2250(a)(2)(B) and 42 U.S.C. § 16913 are unconstitutional.

A

Prior to National Federation, we concluded 42 U.S.C. § 16913 was constitutional in United States v. Howell, 552 F.3d 709, 717 (8th Cir. 2009). In

Howell we found the registration requirements of § 16913 are valid under the Commerce Clause and the Necessary and Proper Clause as the requirements are intended to regulate the interstate movement of sex offenders and "§ 16913 is an 'appropriate aid to the accomplishment' of tracking the interstate movement of sex offenders." Id. (quoting United States v. Darby, 312 U.S. 100, 121 (1941)).

We began Howell by recounting Congress's three categories of Commerce Clause power as described by the Supreme Court in United States v. Lopez, 514 U.S. 549 (1995). The Commerce Clause empowers Congress: (1) "[to] regulate the use of the channels of interstate commerce;" (2) "to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce." Id. at 558-59 (internal citations omitted). The Supreme Court entertains four further considerations to determine whether a regulation is valid under the third category: (1) whether the regulated activity is economic in nature; (2) whether the statute contains an express jurisdictional element linking its scope in some way to interstate commerce; (3) whether Congress made express findings regarding the effects of the regulated activity on interstate commerce; and (4) the attenuation of the link between regulated activity and interstate commerce. Morrison, 529 U.S. at 611-12.

In Howell we recognized § 16913 "contains no jurisdictional element" placing it within the first or second prong of Lopez and there is little evidence that intrastate sex offender registration substantially affects interstate commerce. Howell, 552 F.3d at 715. However, in interpreting § 16913 in conjunction with 28 U.S.C. § 2250(a)(2), we determined Congress's focus on the interstate movement of sex offenders was substantial enough to find SORNA valid under the Commerce Clause and the Necessary and Proper Clause, and that the registration requirements of § 16913 are "a reasonable means to track those offenders if they move across state lines." Id. at 717.

In <u>Howell</u>, we applied Justice Scalia's articulation of the Commerce Clause in <u>Gonzales v. Raich</u>, 545 U.S. 1, 22 (2005) (upholding Congress's authority to regulate intrastate production and consumption of marijuana as a necessary and proper extension of Congress's authority to regulate the interstate market for the drug):

> [T]he authority to enact laws necessary and proper for the regulation of interstate commerce is not limited to laws governing intrastate activities that substantially affect interstate commerce. Where necessary to make a regulation of interstate commerce effective, Congress may regulate even those intrastate activities that do not themselves substantially affect interstate commerce.
> . . .
> The regulation of an intrastate activity may be essential to a comprehensive regulation of interstate commerce even though the intrastate activity does not itself "substantially affect" interstate commerce. Moreover, . . . Congress may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce. The relevant question is simply whether the means chosen are "reasonably adapted" to the attainment of a legitimate end under the commerce power.

<u>Id.</u> at 34-37 (Scalia, J., concurring) (internal citations omitted). While doubting the constitutionality of § 16913 under the Commerce Clause alone, we concluded "the enabling necessary and proper clause reveals the statute is constitutionally authorized." <u>Howell</u>, 552 F.3d at 715. Anderson argues <u>Howell</u> is no longer good law after <u>National Federation</u>.

In <u>National Federation</u>, Chief Justice Roberts[2] acknowledged the Commerce Clause permits Congress to regulate intrastate activities which have a substantial effect on interstate commerce but concluded Congress may not regulate economic activity by compelling it. 132 S. Ct. at 2586-87. Chief Justice Roberts reasoned the individual mandate could not be upheld under the Commerce Clause because:

> The individual mandate . . . does not regulate existing commercial activity. It instead compels individuals to *become* active in commerce by purchasing a product, on the ground that their failure to do so affects interstate commerce. Construing the Commerce Clause to permit

[2]The issues in <u>National Federation</u> resulted in a split decision, and there is no controlling opinion on the issue of whether provisions of the Affordable Care Act violated the Commerce Clause. <u>See</u> <u>United States v. Robbins</u>, 729 F.3d 131, 135 (2d Cir. 2013) ("It is not clear whether anything said about the Commerce Clause in <u>NFIB</u>'s primary opinion–that of Chief Justice Roberts–is more than dicta, since Part III-A of the Chief Justice's opinion was not joined by any other Justice and, at least arguably, discussed a bypassed alternative, rather than a necessary step, in the Court's decision to uphold the Act."). Chief Justice John Roberts wrote alone, finding the individual mandate of the Affordable Care Act in imposing a minimum essential coverage requirement under which individuals must purchase and maintain health insurance coverage exceeded Congress's power under the Commerce Clause and the Necessary and Proper Clause, but was constitutional under Congress's taxing authority. 132 S. Ct. at 2592, 2594. Justices Scalia, Kennedy, Thomas, and Alito filed a dissent, and Justice Thomas wrote a separate dissent, also concluding that the Affordable Care Act violated the Commerce Clause. <u>Id.</u> at 2644 (joint opinion of Scalia, J., Kennedy, J., Thomas, J., Alito, J., dissenting); <u>id.</u> at 2677 (Thomas, J., dissenting). We cannot read the conglomeration of the dissenting opinion of four Justices combined with the concurring opinion of the Chief Justice to constitute binding precedent interpreting the Commerce Clause. However, we apply the opinion of Chief Justice Roberts because it articulates the narrowest grounds for upholding the individual mandate. <u>Marks v. United States</u>, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169 n.15 (1976))).

Congress to regulate individuals precisely *because* they are doing nothing would open a new and potentially vast domain to congressional authority. Every day individuals do not do an infinite number of things. In some cases they decide not to do something; in others they simply fail to do it. Allowing Congress to justify federal regulation by pointing to the effect of inaction on commerce would bring countless decisions an individual could *potentially* make within the scope of federal regulation, and–under the Government's theory–empower Congress to make those decisions for him.

Id. at 2587. Since "[t]he individual mandate forces individuals into commerce precisely because they elected to refrain from commercial activity," it "cannot be sustained under a clause authorizing Congress to 'regulate Commerce.'" Id. at 2591.

Chief Justice Roberts also determined the individual mandate could not be sustained under the Necessary and Proper Clause because the individual mandate was not "'incidental' to the exercise of the commerce power." Id. at 2592 (quoting McCulloch v. Maryland, 17 U.S. 316, 418 (1819)). The government had argued the Supreme Court did not have to consider the effect of inactivity on interstate commerce because it was sufficient that Congress regulated commercial activity in a manner which required the government to regulate inactivity. Id. at 2591-93; see Raich, 545 U.S. at 22. In dispensing of the government's argument, the Chief Justice distinguished Raich by holding the issue presented in Raich only concerned the constitutionality of "'individual *applications* of a concededly valid statutory scheme,'" Nat'l Fed'n, 132 S. Ct. at 2593 (quoting Raich, 545 U.S. at 23), whereas the individual mandate allows "Congress [to] reach beyond the natural limit of its authority and draw within its regulatory scope those who otherwise would be outside of it," id. at 2592. In other words, any law upheld under the Necessary and Proper Clause must "involve exercises of authority derivative of, and in service to," a separate power granted to Congress. Id. at 2592.

With regard to the constitutionality of § 16913, <u>National Federation</u> forces us to determine what remains of <u>Raich</u>, and whether the rationale of the Eighth Circuit in <u>Howell</u> remains valid. Chief Justice Roberts' opinion left intact <u>Raich</u>'s key holding: Congress may regulate economic intrastate activity when doing so is a necessary component of a comprehensive interstate regulation. <u>Raich</u>, 545 U.S. at 22. Chief Justice Roberts also interpreted the Necessary and Proper Clause as allowing regulations which are "essential component[s]" of proper federal action, or regulations which are "derivative of, and in service to, a granted power." <u>Nat'l Fed'n</u>, 132 S. Ct. at 2592.

Reading <u>Raich</u> and the Necessary and Proper Clause together, we believe <u>Howell</u> correctly decided that even if the constitutionality of § 16913 is doubtful under the Commerce Clause alone, "the enabling necessary and proper clause reveals the statute is constitutionally authorized" because the registration requirements of § 16913 are part of the constitutional power Congress has to punish sex offenders who cross state lines. 552 F.3d at 715. Because Congress has the power to punish sex offenders who cross state lines, Congress is able to exercise the "narrow" and "incidental" power of requiring those sex offenders to register. <u>Nat'l Fed'n</u>, 132 S. Ct. at 2592. "That the regulation ensnares some purely intrastate activity is of no moment. As we have done many times before, we refuse to excise individual components of that larger scheme." <u>Raich</u>, 545 U.S. at 22. We read the registration requirement of § 16913 as necessary to the effectuation of the broader SORNA scheme and therefore a legitimate exercise of congressional power under the Necessary and Proper Clause. <u>See</u> <u>Howell</u>, 552 F.3d at 716; <u>see also</u> <u>United States v. Cabrera-Gutierrez</u>, 756 F.3d 1125, 1131-32 (9th Cir. 2014). The registration requirement is a valid exercise of the Commerce Clause, and Anderson has not "clearly demonstrated" the lack of constitutional authority for Congress to enact § 16913. <u>See</u> <u>Nat'l Fed'n</u>, 132 S. Ct. at 2579.

B

Prior to National Federation, we also found § 2250(a)(2)(B) constitutional in United States v. May, 535 F.3d 912, 921 (8th Cir. 2008). In May, we determined, because § 2250(a)(2)(B) requires the government to prove a defendant traveled in interstate commerce and thereafter failed to register, § 2250(a)(2)(B) "derives its authority from each prong of Lopez—and most specifically, the ability to regulate 'persons or things in interstate commerce' and 'the use of the channels of interstate commerce.'" Id. (quoting Lopez, 514 U.S. at 558). We concluded that even if § 2250(a)(2)(B) were distinguishable from Raich, and thus not constitutional under the third Lopez prong, "SORNA would still remain valid under the first two interstate commerce jurisdictional prongs." Id. at 922. Anderson argues May is no longer good law after National Federation.

Nothing in National Federation calls into question the analysis of May in regard to the jurisdictional hook of § 2250(a)(2)(B) which requires interstate travel before the federal government can punish a sex offender's failure to register. The enforcement of registration under § 2250(a)(2)(B) is distinguishable from the Affordable Care Act. Unlike the individual mandate of the Affordable Care Act, which "vest[ed] Congress with the extraordinary ability to create the necessary predicate to the exercise of an enumerated power," the § 2250(a)(2)(B) registration enforcement–applicable to prior sex offenders who have traveled in interstate commerce–only applies to "those who by some preexisting activity bring themselves within the sphere of federal regulation." Nat'l Fed'n, 132 S. Ct. at 2592. We conclude the enforcement of the registration requirement is a valid exercise of the Commerce Clause, and Anderson has not "clearly demonstrated" the lack of constitutional authority for Congress to enact § 2250(a)(2)(B). See id. at 2579; see also United States v. Robbins, 729 F.3d 131, 136 (2d Cir. 2013) (upholding constitutionality of § 2250(a)(2)(B) post National Federation because sex offenders have "opted in" to the regulated group through prior criminal activity and thereafter crossing state lines).

-9-

## III

Accordingly, we affirm the conviction.

_____