# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3068

_____

United States of America,          *
                                   *
          Appellee,                *
                                   *   Appeal from the United
    v.                             *   States District Court for
                                   *   the District of Minnesota.
Dennis Edward Pietrantonio,        *
                                   *
          Appellant.               *

_____

Submitted: October 19, 2010
Filed: March 15, 2011

_____

Before MURPHY, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Dennis Pietrantonio appeals his conviction for failing to timely register or update his registration as a convicted sex offender, in violation of the federal Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. § 2250(a). We reverse.

## I.     BACKGROUND

In November 2004, Pietrantonio was convicted and sentenced in Minnesota state court of solicitation of a minor to engage in sexual activity. Upon his release, he was required to register as a sex offender in Minnesota pursuant to Minnesota state

law, and he was informed of this requirement by his state probation officer. Following a return to prison in early 2007 for a parole violation, Pietrantonio was released in late July 2007 and returned to Hibbing, Minnesota. However, he was not welcome at a place called Stover House, where he had resided prior to his latest period of incarceration, nor was he welcome at his daughter Kim's apartment complex in Hibbing. Accordingly, he was homeless in Hibbing, though Kim and her husband, James Koch, helped him manage his severe diabetes by keeping his insulin refrigerated and bringing it to him for administration in various parking lots around Hibbing. Despite being homeless in August 2007, Pietrantonio complied with his registration requirements by notifying the police department each time he moved his belongings to a different parking lot in Hibbing. Shortly after their first meeting on July 30, 2007, Pietrantonio informed Officer Stark, the police officer in charge of sex offender registration in Hibbing, that he and his daughter's family were planning a move to Las Vegas, Nevada, although he did not specify *when exactly* they would move. Shortly before the family left for Las Vegas on August 31, 2007, Pietrantonio and Koch spoke with a Hibbing police officer about the sex offender registration requirements upon moving. Because Officer Stark was on sick leave that day, Pietrantonio and Koch spoke with another officer who allegedly erroneously informed them that Pietrantonio did not need to fill out any forms prior to leaving Hibbing.

Once Pietrantonio got to Las Vegas and the family secured an apartment, he called his daughter's former apartment manager in Hibbing and gave her his new address. Evidence at trial suggested that Officer Stark received this information from the apartment manager. Nonetheless, upon learning that Pietrantonio had left the jurisdiction, Officer Stark signed a state court complaint charging Pietrantonio with failing to leave a forwarding address in violation of Minnesota's sex offender registry laws. A Minnesota warrant was issued for his arrest.

Soon after arriving in Nevada, Pietrantonio was briefly hospitalized. Kim signed a Las Vegas apartment lease on September 4, 2007, and Koch assisted

-2-

Pietrantonio in obtaining a Nevada driver's license on September 10, 2007. He then filled out his required Nevada sex offender registry form on September 14, 2007, falsely claiming that he had been in Nevada for only four days.

Eventually Las Vegas authorities began looking for Pietrantonio based upon the Minnesota warrant. When officers went to Pietrantonio's listed address in February 2008, he was not there. In early January 2008, Pietrantonio took a bus cross-country to Boston, Massachusetts. One of Pietrantonio's trial witnesses, who completed part of the bus trip with him, testified that Pietrantonio went to Boston only to visit another daughter and to obtain medical care, not to live permanently. On cross-examination, this same witness admitted that Pietrantonio said while on the bus trip that the Las Vegas environment was not for him. While in Massachusetts, Pietrantonio's health problems worsened, and he was hospitalized for nearly two months in Boston. His medical records indicate that he told hospital officials that he did not reside in Massachusetts, but that he was visiting his daughter, and that he lived in Nevada. He did not register as a sex offender in Massachusetts during the time he was in Boston. On April 15, 2008, Pietrantonio was arrested by federal marshals in Massacusetts on the outstanding Minnesota warrant. After Pietrantonio's arrest, authorities returned him to Minnesota, and a federal grand jury charged him in a single-count indictment with a SORNA violation.

The indictment read as follows:

> From on or about September 14, 2007 through on or about April 15, 2008, in the State and District of Minnesota, the defendant, **DENNIS EDWARD PIETRANTONIO**, a person required to register under [SORNA], traveled in interstate commerce and did knowingly fail to update a registration as required by [SORNA], all in violation of Title 18, United States Code, Section 2250(a) and Title 42, United States Code, Sections 16911 and 16913.

The dates in the indictment suggest that the government's theory encompassed Pietrantonio's failure to update his Minnesota registration and/or failure to timely register in Nevada, as well as his failure to register at all in Massachusetts. Prior to trial, Pietrantonio moved to dismiss the indictment, arguing that it contained inadequate factual support to fully apprise him of the charges, and also that the eight-month time frame left him to speculate about when, exactly, the government alleged that the offense occurred. Finally, Pietrantonio alleged that the indictment was defective because it only alleged a Minnesota violation when two other jurisdictions were potentially involved. The district court denied the motion to dismiss, finding that the indictment sufficiently put Pietrantonio on notice regarding the elements of the offense and the relevant dates, and gave him the ability to plan his defenses accordingly. United States v. Pietrantonio, No. 08-170, 2008 WL 4205546, at *5 (D. Minn. Sept. 9, 2008).

At trial, Koch testified that Pietrantonio believed, based on the Hibbing police officer's advice, that he had complied with Minnesota laws by calling to give a forwarding address to the apartment manager. Koch also testified that, once in Las Vegas, Pietrantonio had to obtain a driver's license before he could register with an official address. Koch explained that he helped Pietrantonio register in Las Vegas as soon as was practicable, which turned out to be September 14, 2007. Pietrantonio's remaining witnesses generally supported the theory that Pietrantonio complied with Minnesota forwarding requirements by speaking with the police before he left, that he registered in Nevada as soon as he was physically able, and that he did not move to Massachusetts, but rather was there to visit his daughter and obtain healthcare.

The jury found Pietrantonio guilty of the charge articulated in the one-count indictment, and the court sentenced him to twenty-four months' imprisonment. On appeal, Pietrantonio argues, among other things, that the indictment was defectively duplicitous.

-4-

## II. DISCUSSION

SORNA is codified at 42 U.S.C. §§ 16901-16991, and § 16913 provides in part,

**(a)    In general**

A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

. . . .

**(c)    Keeping the registration current**

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

If a sex offender fails to register under § 16913, he or she can be prosecuted under 18 U.S.C. § 2250. Section 2250 states that sex offenders required to register under SORNA who knowingly fail to register or update a registration as required by SORNA can be fined and/or imprisoned up to ten years.

We review an allegedly duplicitous indictment de novo. <u>United States v. Nattier</u>, 127 F.3d 655, 657 (8th Cir. 1997). Federal Rule of Criminal Procedure 8(a) provides that the government may charge two or more connected offenses in the same indictment, as long as each is charged in a separate count. "Duplicity," meaning that

two or more distinct and separate offenses are joined in a single count, is problematic because it might lead the jury to convict without unanimous agreement on the defendant's guilt with respect to a particular offense. Nattier, 127 F.3d at 657. Nonetheless, the Sixth Amendment right to a unanimous jury verdict, imperiled with a duplicitous indictment, may be cured by a limiting instruction requiring the jury to unanimously find the defendant guilty of at least one distinct act. Id.[1] The Sixth Amendment also requires that a trial be held in the state and district where the crime was committed. United States v. Stanko, 528 F.3d 581, 584 (8th Cir. 2008).

Pietrantonio argues that the government improperly charged him with more than one SORNA offense in a single indictment. The government's theory of the case at trial, and initially on appeal, was that the fact pattern here involved one continuing violation of SORNA. See generally United States v. George, 625 F.3d 1124, 1131 (9th Cir. 2010) (holding that the crime of failing to register as a sex offender is a continuing offense–if the convicted sex offender does not register by the end of the third day after he changes his residence, he violates SORNA, and the violation continues until he is arrested or registers). However, at oral argument, the government conceded that the indictment was duplicitous, and now admits that Pietrantonio's single-count indictment charges two violations–one for the time frame before September 14, which included Pietrantonio's move from Minnesota to Nevada, and a second for the time frame following September 14, which included his alleged move from Nevada to Massachusetts.

---

[1]The government argues Pietrantonio waived the duplicity argument by not raising it in a motion to dismiss prior to trial. United States v. Spencer, 592 F.3d 866, 874 (8th Cir. 2010) (holding that if the defendant does not object to an allegedly duplicitous indictment prior to trial, he waives the issue). Having reviewed the pre-trial record, we find that Pietrantonio adequately raised the substance of the issue prior to trial, even though he did not use the word "duplicitous" in his motion to dismiss the indictment. Accordingly, we fully review the issue.

The government's theory at trial was that the September 14 Nevada registration did not "stop" this continuing violation, because the registration was somehow defective–either because Pietrantonio lied about the length of time he had been in Nevada when he registered, or because he had provided a false address.  The latter of these two contentions turned out to be the government's misunderstanding based upon the fact that Pietrantonio's Nevada registry verification letter was erroneously returned as undeliverable.  It is now undisputed that Pietrantonio provided a correct address to Nevada officials.  That Pietrantonio lied about the length of time he had been in Nevada when he registered is relevant only to whether Pietrantonio failed to *timely* update his registration when he moved from Minnesota to Nevada, not whether he registered at all.  As the government now recognizes, the first violation ceased to be "continuing" when Pietrantonio registered in Nevada.  Indeed, all of the courts that have recognized a "continuing" SORNA violation have found that the violation continues until the defendant is arrested *or* registers.  Id.; United States v. Dixon, 551 F.3d 578, 582 (7th Cir. 2008), overruled on other grounds by Carr v. United States, 130 S. Ct. 2229 (2010); United States v. Hinckley, 550 F.3d 926, 936 (10th Cir. 2008).  Accordingly, the government's continuing violation theory was no longer viable once it became clear that Pietrantonio's Nevada registration, though possibly untimely, contained a valid street address.

The government alleges, however, that even though the indictment was duplicitous, and a specific "unanimity" instruction was not given (such an instruction was not requested by either party), the jury instructions actually cured the duplicity problem.  The government points to instruction nine, which states:

> The crime of failure to register as a sex offender, as charged in the indictment, has three elements, which are: **One:** From on or about September 14, 2007 through on or about April 15, 2008, in the State and District of Minnesota, the defendant was required to register under [SORNA]; **Two:** The defendant traveled in interstate or foreign

commerce; and **Three:** The defendant knowingly failed to update his registration as required by [SORNA].

As to the first element, the parties have stipulated that during the time period charged in the indictment, the defendant was required to register under [SORNA], and you may treat this element as proven.

If all of these elements have been proved beyond a reasonable doubt as to the defendant Dennis Edward Pietrantonio, then you must find the defendant guilty of the crime charged; otherwise you must find the defendant not guilty of this crime.

We fail to see how instruction nine cures the government's admittedly duplicitous indictment. The parties stipulated to element one, which, as we read it, simply sets forth the conclusion that Pietrantonio was a person subject to SORNA's requirements. Insertion of the terms "District of Minnesota" does not ensure that all twelve members of the jury agreed that a crime occurred in Minnesota, especially when the jury was instructed to consider that element proven. The remaining two elements to be found by the jury were that Pietrantonio traveled in interstate commerce, and that he failed to update a registration. Element three did not request any specific finding as to where the defendant knowingly failed to update his registration, and the evidence at trial suggested that it could have occurred in Minnesota, Nevada and/or Massachusetts.

The remaining jury instructions provide no further illumination. For example, instruction eleven detailed the elements of a SORNA violation, including the three-day rule, the meaning of the term "resides," and the fact that it is for the jury to decide whether the defendant traveled to and was habitually living in another state so as to trigger his duty to update the registration. Additionally, the jury was given an affirmative defense instruction. Instruction twelve tracked the statutory language that it is considered an affirmative defense if the defendant proves that uncontrollable circumstances, not created by the defendant, kept him from complying with

registration requirements, and that he complied as soon as those circumstances ceased to exist, 18 U.S.C. § 2250(b).

As we read the record and the instructions, we are left with the unavoidable conclusion that the jury may not have been unanimous, in violation of Pietrantonio's Sixth Amendment rights. Plainly, a portion of the jury could have concluded that Pietrantonio was not justified in registering more than three days after arriving in Nevada. These same jury members may have concluded that Pietrantonio did not actually move to Massachusetts, but only went there to visit his daughter and obtain medical care in Boston. Simultaneously, other jury members might have believed Pietrantonio's affirmative defense that his physical ailments and lack of ability to freely travel justified his failure to *timely* register in Nevada, but did not believe his story about visiting Massachusetts. These members may have believed Pietrantonio intended to reside in Massachusetts and thus voted to convict based upon his failure to update his registration following his move to Massachusetts. Or maybe all twelve believed Pietrantonio was guilty of both violations. We simply do not know. Neither the record nor the jury instructions shed any further light on the situation.

Complicating our instant analysis is the fact that, even though the government has now conceded duplicity, the indictment is not actually duplicitous on its face. Instead, the indictment was rendered duplicitous by the evidence presented at trial. Cf. United States v. D'Amico, 496 F.3d 95, 100 (1st Cir. 2007) ("[T]he fact that an indictment is not duplicitous on its face of course does not guarantee that a jury verdict will be unanimous, based on the evidence actually presented."), vacated on other grounds by 552 U.S. 1173 (2008) (mem.). It was not until the government presented evidence of the possible Massachusetts violation that the indictment became duplicitous, and this, as previously noted, created the potential for a Sixth Amendment jury unanimity problem. Id. However, it may have been Pietrantonio's burden to request a unanimity instruction. See id. at 100-01 (holding that it was defendant's burden to request a unanimity instruction, and his failure to do so rendered the issue

unreviewable).  But, it has been our practice to  review for plain error the district court's failure to give a unanimity instruction, see United States v. James, 172 F.3d 588, 592 (8th Cir. 1999), and this situation may very well meet the rigorous plain error test.

However, we need not decide these difficult issues because there remains a venue problem that comparatively easily carries the day for Pietrantonio.  The general venue statute for multi-jurisdictional offenses, 18 U.S.C. § 3237(a), provides that "any offense . . . begun in one district and completed in another . . . may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."  Pietrantonio objected to venue at the close of the government's case, arguing that the Massachusetts portion of the case was not properly venued in Minnesota.  The government has, correctly in our view, conceded there were two counts alleged in the indictment.  The first included the move from Minnesota to Nevada, ending with Pietrantonio's September 14 Nevada registration, and the second included the alleged move from Nevada to Massachusetts.  While venue would have been proper for the first violation in either Minnesota or Nevada, Minnesota was not the proper venue for the second violation, because Minnesota had no connection to the offense regarding Pietrantonio's failure to update his SORNA registration when he allegedly moved from Nevada to Massachusetts.  See, e.g., United States v. Schlei, 122 F.3d 944, 979-80 (11th Cir. 1997) (holding that a duplicitous security fraud count contained an offense not properly venued for trial, and the lack of any assurances of jury unanimity required vacation of the conviction on that count).

When a defendant is charged with more than one count, venue must be proper with respect to each count. United States v. Granados, 117 F.3d 1089, 1091 (8th Cir. 1997).  Venue was not proper with regard to the "second count" in the duplicitous indictment.  As we have previously discussed, we have no way of knowing why the jury decided what it did, so we are unable to simply excise or vacate the Nevada-to-Massachusetts count without implicating Pietrantonio's Sixth Amendment right to a

-10-

unanimous jury verdict. At oral argument, the government contended that venue was "both the problem and the solution" in this case, again pointing to instruction nine. The government asserted at argument that there is no way the jury could have convicted Pietrantonio without finding that venue was proper in Minnesota for the first count. While that is true, it does not solve the problem of the second count, which was undisputedly[2] not properly venued in Minnesota, nor does it reconcile the possibility that the jury split its verdict between these two counts.

## III.   CONCLUSION

Accordingly, we reverse and remand with directions to the district court to dismiss the indictment.

_____

---

[2]Nor does our opinion in United States v. Howell, 552 F.3d 709 (8th Cir. 2009), cited by the government, solve the government's venue problem in this case. In Howell, we held that venue in a SORNA case lies in both the state that the defendant had registered in and moved from (Iowa), as well as the state the defendant moved to (Texas). Id. at 717-18. Although the government in Howell asked the court to decide that venue would have been proper in any of the states the defendant traveled through to get to Texas, the court expressly did not decide that issue. Id. at 718 n.6. However, even if the Howell court had answered that question in the affirmative, Howell would have no influence on the instant case. The Howell defendant did not register in any of the states he traveled through on the way to Texas. Importantly, for our purposes, Pietrantonio did not travel through Massachusetts on his way to Nevada and his Nevada registration clearly severed and bifurcated the connection between Minnesota and Massachusetts.