# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-3334

_____

United States of America

*Plaintiff - Appellee*

v.

Jamerl M. Wortham

*Defendant - Appellant*

_____

No. 19-3431

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony B. Williams, also known as AB

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 17, 2020
Filed: March 3, 2021
_____

Before COLLOTON, ARNOLD, and KELLY, Circuit Judges.
_____

ARNOLD, Circuit Judge.

Some years ago, Jamerl Wortham and Anthony Williams went on an overnight crime spree in Kansas City, resulting in their conviction for carjacking (18 U.S.C. § 2119), distributing PCP (21 U.S.C. § 841(a)(1), (b)(1)(C)), and possessing a short-barreled shotgun in furtherance of those offenses (18 U.S.C. § 924(c)(1)(A), (B)(i)). They both assert that the district court[1] instructed the jury incorrectly on the distribution charge, while Wortham maintains in addition that the evidence was insufficient to establish that he aided and abetted the principal offenses. We affirm.

On the night in question, Williams, Wortham, and an unidentified third man (often called C.J.) began their criminal activities by stealing a Jaguar automobile and driving it to a hotel where they observed a woman, M.M., sitting on a curb. She was drunk, crying, and waiting for an Uber driver to give her a ride. An FBI agent testified that Wortham had told him that Williams put his arm around M.M. and steered her into the stolen Jaguar. M.M. could not recall how she ended up in that car with the men.

The three men then drove themselves and M.M. to an area containing standalone ATM machines. Around two o'clock in the morning, two women in a Toyota pulled up to one of the ATMs to deposit cash they had earned earlier in the

_____

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

night as waitresses. After Wortham drove directly behind the women's car and parked, Williams and C.J. got out and approached them. Williams grabbed the woman driving the car, Y.C., and demanded cash. C.J. pointed a sawed-off shotgun at Y.C. and at T.J., the woman sitting in the passenger seat. A few seconds later, Williams and C.J. ordered the women into the Toyota's backseat, whereupon the two men jumped inside the car. Williams then drove the Toyota away, and Wortham, accompanied by M.M., followed directly behind in the Jaguar.

The group proceeded to an apartment complex where they left the Jaguar and all piled into the Toyota. With the shotgun pointed toward the backseat where the women sat, they drove to another ATM and tried to force Y.C. to withdraw cash, but their efforts were foiled by Y.C.'s struggles with the machine and the presence of another vehicle. T.J. testified that, as Y.C. struggled with the ATM, the three men grew frustrated and threatened to shoot the women. According to Y.C. and T.J., soon after Wortham drove the car away from the ATM, the defendants forced Y.C. and M.M. to smoke PCP.

T.J. and Y.C. both testified that the men wanted to buy more drugs, and Y.C. said that they were looking for a specific pipe as well, so they next traveled to a gas station to get those items. After that stop, the men headed to the residence of Matthew Walker, a friend of Wortham's. Walker testified that he and Wortham had been smoking PCP together earlier in the day when Wortham told him that he planned to rob someone that night, even showing Walker the sawed-off shotgun he planned to use. The men departed Walker's home and continued their exploits into the morning, buying drugs and pipes and preventing the women from leaving.

As a result of these activities, Williams and Wortham were charged with a host of crimes, and after a four-day trial, a jury found them guilty of every submitted charge. The district court sentenced Wortham to sixty years in prison and Williams to four consecutive terms of life imprisonment, given his extensive criminal history.

Williams and Wortham challenge the district court's jury instruction on the charge of distributing PCP. The court instructed the jury that, to find the defendants guilty of distributing PCP, the evidence must show, in relevant part, that they intentionally transferred PCP "to another." Williams and Wortham maintain that by not specifying in the instruction who the recipient of the distribution was—whether Y.C., M.M., or both—the court violated their rights to a unanimous jury verdict and to a grand jury indictment. They also say that the court's instruction constructively amended their indictment.

We think, however, that Williams and Wortham waived any arguments they may have had regarding the jury instructions. First of all, they and the government jointly proposed the instruction at issue. When defendants specifically request a particular instruction, including one they jointly propose with the government, they cannot later assert on appeal absent an objection that the instruction was given in error. *See United States v. Tillman*, 765 F.3d 831, 836 (8th Cir. 2014). Williams and Wortham maintain nonetheless that the district court didn't actually give the proposed instruction. But their argument is misleading. It is true that the district court modified a different part of the proposed instruction, but it did not modify the part of the instruction that Williams and Wortham now complain about. With respect to that part, the district court instructed the jury exactly as they proposed.

Williams and Wortham also suggest that the instruction wasn't problematic when they proposed it pretrial, and so they did not knowingly waive any challenge to it. They contend that the difficulty arose only when the evidence at trial showed there was more than one drug distributee, and thus more than one drug distribution. But the indictment expressly alleges that the men forced Y.C. and M.M. to smoke PCP, and so the problem of which Williams and Wortham now complain was fully apparent at the time they jointly proposed the instruction. So we decline to review their challenge to the instruction they asked the district court to give.

-4-

Wortham maintains that the district court erred in denying his motion for judgment of acquittal because the evidence was insufficient to show that he aided and abetted the carjacking or the distribution of PCP. We review this challenge de novo, viewing the evidence in a light most favorable to the government and accepting all reasonable inferences drawn from the evidence that support the jury's verdict. *See United States v. Golding*, 972 F.3d 1002, 1005 (8th Cir. 2020). We will not reverse unless no reasonable jury could have found the defendant guilty. *Id.* The parties appear to assume that Wortham acted as a principal in the offenses only because he aided and abetted Williams or C.J. in committing them, *see* 18 U.S.C. § 2, so we confine our discussion to whether a reasonable jury could have found that Wortham aided or abetted the commission of these crimes.

The Supreme Court has explained that a person aids or abets a crime "if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *See Rosemond v. United States*, 572 U.S. 65, 71 (2014). The defendant must intend to facilitate that offense's commission, and "[a]n intent to advance some different or lesser offense is not, or at least not usually, sufficient: Instead, the intent must go to the specific and entire crime charged." *Id.* at 76. To illustrate, the Court in *Rosemond* suggested that, for a person to be found guilty of aiding or abetting an armed crime of violence or an armed drug-trafficking crime, *see* 18 U.S.C. § 924(c), he must have advance knowledge that a firearm would be used, and he must have had this knowledge long enough beforehand to permit him to choose freely whether to withdraw from the activity or continue participating in it. *Rosemond*, 572 U.S. at 78. As a result, a person should not be found guilty of aiding and abetting an armed drug deal if the person did not know the deal would be an armed one. If a gun suddenly appears during the crime, without the defendant's knowledge, he generally should not be convicted of facilitating an armed offense. *Id.* But the Court was careful to note that a jury could permissibly infer that

the defendant indeed had advance knowledge "from his failure to object or withdraw" from the crime "after a gun was displayed or used." *Id.* at 78 n.9.

We begin with Wortham's convictions for carjacking and carrying a gun in furtherance of a carjacking. We have no difficulty concluding that he took an affirmative act that furthered the offense: The evidence is overwhelming that he supplied the shotgun used to ensure the victims' compliance. The real question is whether the evidence is sufficient to show that Wortham intended to facilitate a carjacking as opposed to some other offense. Wortham maintains that he and Williams planned an ATM robbery, not a carjacking, and so he did not intend to facilitate a carjacking. He contends that it was only after the robbery attempt was foiled (presumably, it seems, because Y.C. deposited cash into the ATM instead of withdrawing it), that Williams and C.J. unexpectedly resorted to a carjacking.

But there is a good deal of circumstantial evidence in the record from which the jury could reasonably infer that Wortham intended to facilitate a carjacking. First of all, we have reviewed a video recording of the carjacking, and it's hardly clear that Williams and C.J. resorted to a carjacking only after their robbery attempt had been foiled. Within a matter of seconds after approaching the women, the men had ordered them into the backseat and hopped inside their car. Even though they had just missed getting Y.C.'s cash, as she had seconds earlier deposited it into the ATM machine, T.J. testified that she still had a bag of cash to deposit and that Williams and C.J. were going through it as they ordered the women into the back of the Toyota. A jury could reasonably conclude that, by taking the car despite having secured a bag of cash, the men had intended something more than a robbery from the outset.

It is also significant that the video appears to show that Wortham parked the Jaguar just inches behind the Toyota. If the men intended only a robbery, it would make scant sense to pull that close to the Toyota since, when they returned to the Jaguar with their loot, the driver would be prevented from making a swift, clean

getaway. He would first have to back away from the Toyota to drive off or drive forward and push it out of the way. Perhaps the jury could have believed that, in parking as he did, Wortham had merely committed robbery malpractice. But it is at least equally reasonable for the jury to infer that Wortham parked so close because the group intended all along to take the Toyota, which would allow Wortham simply to drive forward to leave the scene.

Finally, the jury could infer from Wortham's participation in the night's events that he knew all along they would commit a carjacking. Immediately after Williams and C.J. took control of the Toyota, Wortham followed directly behind in the Jaguar. Instead of withdrawing from an incident that had taken an unexpected turn, Wortham continued to participate. He had ample opportunity to withdraw, as, for instance, simply by turning right out of the lot containing the ATMs instead of left. But he didn't. In fact, once the group shed the Jaguar and piled into the Toyota, Wortham himself took the wheel and, for much of the night, drove the very car he says the evidence was insufficient to show he intended to take. We point out, moreover, that before the carjacking, Wortham was already behind the wheel of the stolen Jaguar, supporting an inference that he had no qualms about taking another vehicle.

We note, too, that even though Wortham told police they intended to commit a robbery only, the jury was not obligated to accept Wortham's account; the jury could have inferred that he was merely trying to minimize his involvement. The jury likewise did not have to believe Walker's testimony relating Wortham's robbery plans. But even if the jury believed Walker, it could still find that Wortham and Walker were merely discussing Wortham's plans without precise legal concepts in mind: In ordinary language a "robbery" might include a "carjacking," or at least it does not eliminate the possibility of a carjacking. Or the jury could have believed Walker's testimony but concluded nevertheless that Wortham's plans had changed in the interim between his discussion with Walker and the carjacking hours later. Given this

record, we think it reasonable for a jury to infer that Wortham had intended to facilitate the carjacking.

The dissent offers alternative explanations for these events and concludes that "the government's evidence in support of Wortham's carjacking charge was equivocal and therefore insufficient for a reasonable jury to find that he committed each of the elements of the offense." In the first place, we don't think that the government's evidence was equivocal. Even if it were, since "there is an interpretation of the evidence that would allow a reasonable jury to find the defendant[s] guilty beyond a reasonable doubt," we will not disturb the jury's verdict on this count. *See United States v. Hensley*, 982 F.3d 1147, 1154 (8th Cir. 2020). What is more, "[w]e cannot reject a jury's conclusions merely because the jury may have chosen the arguably weaker of two contradictory, albeit reasonable, inferences." *See United States v. Galloway*, 917 F.3d 631, 635 (8th Cir. 2019).

The evidence that Wortham aided and abetted drug distribution is admittedly thinner, but it is nonetheless sufficient to support his conviction for distributing PCP and possessing a short-barreled shotgun in furtherance of that crime. By supplying the shotgun in question and driving the car when the distributions occurred, Wortham facilitated the offense. The question, once again, is whether he intended to do so. He maintains that Williams alone distributed the PCP and that no evidence showed he had the requisite foreknowledge that Williams would do that.

T.J. affirmed, however, that Wortham appeared comfortable with Williams distributing the drugs and that he did not try to stop Williams. Y.C. agreed and added that Wortham, C.J., and Williams were "all working together" at this time. In fact, she said that "they" pulled out a PCP-laden blunt because M.M. was "very distressed," and so "they" asked the women to smoke it. The evidence also showed that Wortham himself had been smoking PCP earlier in the day and was even doing so immediately before Williams passed the blunt to the women. Y.C. explained, "So it did start off

with one of them pulling out the blunt and passing it around the vehicle and next passing it to the victims." A jury could reasonably conclude from this testimony that Wortham was fully on board with, and intentionally facilitated, the drug's distribution.

Despite Wortham's protestation, the testimony is not insufficiently reliable simply because Y.C. said the men forced her to smoke a blunt while M.M. said she was forced to smoke from a glass pipe. Even Wortham admits the women were forced to smoke, albeit not by him. M.M.'s memory of the events surrounding when the blunt was supposedly passed around was admittedly hazy, and when she mentioned smoking from a glass pipe, she appeared to be noting an event that occurred later in the evening. It is certainly reasonable to think that the men first forced the women to smoke a blunt and then later forced M.M. to smoke from a pipe. Since this detail is relatively minor, and the differing testimonies reconcilable anyway, it is not the stumbling block Wortham says it is.

Affirmed.

KELLY, Circuit Judge, dissenting.

In my view, the government failed to present evidence at trial sufficient to prove beyond a reasonable doubt that Jamerl Wortham aided and abetted the distribution of PCP, 21 U.S.C. § 841(a)(1), (b)(1)(C), or carjacking, 18 U.S.C. § 2119. Though Wortham did nothing to stop these crimes from occurring, neither is there evidence that he intended for his actions to facilitate their commission, as is required to establish aiding and abetting liability. See 18 U.S.C. § 2. The jury instructions on the charge for distribution of PCP present another issue, as I believe they permitted the jury to reach a nonunanimous verdict.

A person can be convicted under 18 U.S.C. § 2 for aiding and abetting a crime "if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with

the intent of facilitating the offense's commission." Rosemond v. United States, 572 U.S. 65, 71 (2014). This demands that the defendant do more than just "associate himself with the venture" in some way. Id. at 81 n.10 (cleaned up). He must "participate in it as in something that he wishes to bring about and seek by his action to make it succeed." Id. (cleaned up). Put another way, "the government must prove that the defendant had a purposeful attitude, defined as affirmative participation which at least encourages the perpetrator." United States v. Rolon-Ramos, 502 F.3d 750, 758 (8th Cir. 2007) (cleaned up).

The government's evidence in support of the count for aiding and abetting the distribution of PCP was limited. As the court points out, Wortham was driving the Toyota while Williams sat in the backseat with the women and, according to their testimony, forced Y.C. and M.M. to smoke PCP. Wortham also supplied the shotgun, which remained on the floor in the front seat. And T.J. and Y.C. agreed with the prosecutor's broad statement at trial that "all of the men in the car appear[ed] comfortable with [Williams forcing the women to smoke]" and were "all working together." Missing from the trial record, however, is evidence that Wortham intended these actions, or inactions, to facilitate the distribution of PCP to either Y.C. or M.M.

To the contrary, T.J. testified that it was Williams who "pulled out the drugs." She said that Williams "asked us if we smoked, I said no, and then he proceeded to smoke it and made [Y.C.] and [M.M.] smoke with him." Even when the prosecutor used the word "they" in his questioning ("How did they make them smoke?" and "So you said they made [Y.C.] and the other young lady smoke?"), T.J. answered using the singular "he," referring to Williams. She testified that "[h]e told [M.M.] to puff it. She tried to pretend like she did, and he was like that wasn't good enough, and he didn't think that she puffed it so he told her to actually puff it. And then he did the same thing to [Y.C.]." At no point during this portion of her testimony did T.J. mention Wortham or C.J., the third man involved in the crimes, either by name or by other reference. Y.C., in turn, did not name any defendant in particular during her

description of these events, testifying that "they asked all [of] us to smoke from [a blunt]." Finally, M.M. said only that a pipe "was forced" into her mouth, but she did not specify by whom.

Nothing in this testimony illustrates an affirmative act by Wortham intended to facilitate the distribution of PCP. Indeed, it is not clear from the record that Wortham could even see or understand from his position in the driver's seat what was going on in the backseat. Without any other evidence describing Wortham's conduct during this portion of the night, the trial record was insufficient to establish beyond a reasonable doubt that Wortham did anything more than remain in the car while the distribution offense occurred and acquiesce to it. This is insufficient to establish aiding and abetting liability. See United States v. Thomas, 469 F.2d 145, 147 (8th Cir. 1972) ("In order for the defendants to be guilty of aiding and abetting a crime it is necessary that there be more than mere presence and acquiescence in the crime itself."). The burden is on the government to prove the elements of a crime beyond a reasonable doubt. United States v. Crenshaw, 359 F.3d 977, 987 (8th Cir. 2004) ("[I]n a criminal case, substantial evidence means evidence sufficient to prove the elements of the crime beyond a reasonable doubt."). Here, though the evidence at trial may have been consistent with the government's theory, in my view it falls short of proof beyond a reasonable doubt that Wortham aided and abetted Williams or anyone else in distributing PCP. See In re Winship, 397 U.S. 358, 363 (1970) (explaining that the beyond a reasonable doubt standard "provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law" (cleaned up)). I would vacate Wortham's conviction on this count and the corresponding 18 U.S.C. § 924(c) conviction for possessing a weapon in furtherance of this crime.

The jury instructions highlight another problem with the distribution count. Count Thirteen of the superseding indictment charged that Williams and Wortham,

-11-

"aiding and abetting each other and others, did knowingly and intentionally distribute a mixture or substance containing phencyclidine ("PCP")," on or about April 9, 2016. The court then instructed the jury that the underlying offense of distributing PCP has two elements: (1) "the defendant intentionally transferred a mixture or substance containing [PCP] . . . *to another*," and (2) "knew that [he] transferred a controlled substance." (emphasis added). Though we have held that "the identity of the distributee is not an essential element of the offense charged," United States v. Cosby, 529 F.2d 143, 146 (8th Cir. 1976), that case and United States v. Martin, 482 F.2d 202 (1973), upon which Cosby relies, arguably stand only for the proposition that the government need not identify the distributee by name in the indictment. See Martin, 482 F.2d at 204 ("Martin finally contends that the indictment was fatally defective in that it failed to reveal the name of the purchaser of the narcotics. There is no merit to this contention."); Cosby, 529 F.2d at 146 ("[T]he identity of the distributee is not an essential element of the offense charged, and the government is not required to identify the distributee in the indictment."). But even if the government does not have to prove the identity of the distributee, this does not mean that it may establish the elements of the crime by presenting evidence of multiple distributions to different individuals, thus permitting different jurors to reach different conclusions about which of the distributions actually occurred. See United States v. Karam, 37 F.3d 1280, 1286 (8th Cir. 1994) (explaining that "[t]he principal vice of a duplicitous indictment is that the jury may convict a defendant without unanimous agreement on the defendant's guilt with respect to a particular offense").

Here, though the superseding indictment's distribution count alleged only that Wortham and Williams distributed PCP to an unidentified, singular distributee, at trial the government presented evidence of two separate distributions of PCP to two different individuals. The government first elicited testimony that one or both of the defendants forced M.M. to smoke PCP, and then that one or both of the defendants forced Y.C. to smoke PCP. This amounts to evidence of two intentional transfers of PCP "to another." The jury was not instructed that it had to identify which of the

distributions the government had proven beyond a reasonable doubt. The evidence of two separate distributions—distinct offenses—thus rendered the distribution of PCP count duplicitous, meaning that it impermissibly joined "two or more distinct and separate offenses" in one count. United States v. Moore, 184 F.3d 790, 793 (8th Cir. 1999); see United States v. Pietrantonio, 637 F.3d 865, 871 (8th Cir. 2011) (explaining that a count that is not duplicitous on its face may be "rendered duplicitous by the evidence presented at trial").[2]

Based on the government's evidence, some jurors may have concluded that Williams forced M.M. to smoke PCP, while others may have believed he forced only Y.C. to smoke PCP. This problem becomes yet more complicated if one considers the aiding and abetting theory. It is possible the jury found that one defendant distributed PCP to M.M., but that the other defendant aided and abetted distributing PCP only to Y.C., or the other way around. See United States v. Roan Eagle, 867 F.2d 436, 445 (8th Cir. 1989) (explaining that there can be no aiding and abetting liability without an underlying criminal offense). Though the evidence was insufficient to support a guilty verdict on the distribution count as to Wortham, I also believe it was error for the district court not to provide a specific instruction informing the jury that it must unanimously find the defendant guilty with respect to the same act of distribution. See United States v. Hiland, 909 F.2d 1114, 1139 (8th Cir. 1990); Pietrantonio, 637 F.3d at 869; Karam, 37 F.3d at 1286. Even on plain error review, I believe the absence of a specific unanimity instruction at trial warrants

---

[2]It is true that in support of Count One, the conspiracy to kidnap charge, the superseding indictment alleged that Wortham and Williams committed the overt act of "forc[ing] T.J., Y.C., and M.M. to smoke PCP." But the government alleged no such conduct in support of the distribution count, which charged only that the defendants "did knowingly and intentionally distribute [PCP]." Under the circumstances, I would not find waiver and would instead review the jury instructions for plain error, as the defendants did not object to the challenged instruction at the close of evidence. See United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011).

-13-

vacating both Wortham's and Williams's convictions on this count, as well as the accompanying § 924(c) counts.

Although a closer call, I also agree with Wortham that the government did not present sufficient evidence to permit a reasonable jury to find him guilty beyond a reasonable doubt of carjacking. The jury was instructed that to convict Wortham of aiding and abetting on this count it had to find that Wortham: (1) "[knew] carjacking was being committed or going to be committed," (2) "had enough advance knowledge of the extent and character of the carjacking that he was able to make the relevant choice to walk away," (3) "knowingly acted in some way for the purpose of causing, encouraging or aiding the commission of the carjacking," and (4) "intended someone to carjack the victim." I agree that the government's evidence was not inconsistent with an inference that Wortham intended the carjacking. But such evidence is not proof beyond a reasonable doubt that he knew the carjacking was going to happen or that he meant for his actions to help the other men complete the crime.

For example, I am not persuaded that a reasonable jury could conclude from the fact that Wortham parked the Jaguar directly behind the Toyota that he understood the plan all along was to take the Toyota. It is just as plausible that Wortham pulled up immediately behind the Toyota to ensure the other two men would be able to reach their intended victims before they fled. And putting the Jaguar in reverse would not necessarily preclude a quick getaway from the otherwise empty bank drive-through. Further, though Wortham confessed to planning a robbery, in that same confession he explained that the other two men had not mentioned anything about kidnaping anyone and that the plan had been for them to rob their victims and get back in the Jaguar. Wortham's conduct after the carjacking is relevant, but on this record it is insufficient to support the verdict. He was not charged with accessory after the fact of a carjacking but with aiding and abetting the crime of carjacking itself. "The presumption of innocence operates to remind the jury that the government has the burden to prove each element of the offense *beyond a reasonable doubt*." United

-14-

States v. Harper, 466 F.3d 634, 645 (8th Cir. 2006) (emphasis added). In this case, the government's evidence in support of Wortham's carjacking charge was equivocal and therefore insufficient for a reasonable jury to find that he committed each of the elements of the offense. See United States v. Higginbotham, 451 F.2d 1283, 1285 (8th Cir. 1971). Accordingly, I would also vacate Wortham's conviction for carjacking and possessing a gun in furtherance of that crime.

I respectfully dissent.

_____